Good morning, Your Honors. Jason Carr appearing on behalf of Appellate Ortiz-Lopez. With the Court's leave, I intend to reserve a minute of my time for rebuttal. The seemingly simple question of whether a state felony possession of narcotic conviction constitutes an aggravated felony for immigration purposes has proved to be anything but. There's been a lot of case law on this issue. There's been a lot of divergent opinions that have developed both within the Federal Courts of Appeals and the Board of Immigration Appeals. And what's interesting about the question is this idea which has erupted that the same term, aggravated felony, should be given a different definitional context in the sentencing guideline versus the immigration context. And what this Court has decided, in an I barrago lindo, a case that the government relies on heavily in their answering brief, is that in the sentencing guideline context, a first-time state felony possession of narcotic conviction does qualify as an aggravated felony for the purposes of applying Section 2L1.2. And when I – and I would say that the I barrago lindo in our position is that that case is distinguishable because it concerns a sentencing context. And that's not an idle distinction, because if you look at I barrago lindo, the Court – this Court itself makes that distinction part of its decision. In I barrago lindo, the Court talks about how, well, there's the sentencing commentary leads us to believe that this state felony conviction should qualify as an aggravated felony. It relies specifically on guideline commentary. It relies specifically on guideline purposes. Even more stark, however, is the Court specifically talks about Board of Immigration Appeals precedent and how that precedent differs from what the decision is in I barrago lindo. And what the Court – this Court says there is that Board precedent is construing it in a different context, and that the Board of Immigration Appeals has different policy goals and concerns than – than policy concern. Well, what the Board is primarily concerned with, and what is articulated in great detail in cases like INRI-KVD and INRI-LG, is that national uniformity and application of immigration laws is critical. It's critical because we don't want similarly situated noncitizens to be subject to vastly different immigration consequences based solely on vagaries in state law. Well, counsel, let's assume that you're correct in that. Now, where do we go from there? We are looking at this in the context of a criminal conviction, and you're asking us to go back collaterally to look at this, and let's say that he should have been – that it isn't an aggravated felony, and that he should have been advised of other options. So what do we do next? Do we say, okay, we cancel out the removal? That's what this Court's precedent has held is the inquiry, and that precedent is that in a legal reentry criminal conviction, the law allows defense counsel and the defendant to have a second look at the removal proceeding. Before the government is allowed to use this removal proceeding as an element, and indeed, a prior removal is an element of a 1326 prosecution, before the prosecution can use this fact of removal, the defense counsel, defendant, we're allowed, the Court is allowed to go back and look at this and say, is this removal fundamentally fair? And what precedent indicates is that if we can establish two things, one, that there's a defect in the prior proceeding, two, that we can show prejudice. In other words, was it plausible that but for this proceeding, the removal would have come out differently, that there would not have been a removal? And why is it plausible? It is plausible in this case because Ortiz-Lopez was statutorily eligible for a fast-track voluntary departure. Under 1229C? 1229CA. And that is, but that's not mandatory. It's the Attorney General may, as you know. Exactly. So, I mean, we get into multiple levels of speculation here. Well, the case law does So if prejudice comes out of a may, a discretionary decision? Well, what I have to show is it's plausible that there could have been a different outcome. So we cannot go back and know what this immigration judge would have done. All we can do is say, well, the first prong of proving it's plausible is I have to establish statutory eligibility. And the way I read the case law, though this is subject to some debate, is once we prove statutory eligibility, that the burden shifts to the immigration judge. Now, we do have a lot of guidance, though. The board has told us what to look at. Well, what did the immigration judge do? Well, the immigration judge never, this was never brought up in the proceeding, which is interesting because Mr. Ortiz was not charged with the commission of an aggravated felony as a grounds for removal, which is one of the most common grounds for removal. He was charged with entry without inspection and a controlled substance offense. Is the immigration judge the one that's empowered to make this may permit voluntary departure? Yes, he is. He is the one who exercises the attorney general's discretion. So here we have an immigration judge who decided, or am I hallucinating, not to allow that, exercised the discretion that was vested in that person and said, you're out of here. I would disagree. There was no exercise of discretion by the immigration judge in this matter. The idea of a, and there was some confusion in the law at this time. I would submit to the court, this fast track voluntary departure creature was a recent development of Congress. It became active in 1997, and the board had to set some standards and explain to the judges what this was and how it was different from the way voluntary departures were traditionally treated. Well, but voluntary departures had been on the book for a long time, and it seems to me that this was the bread and butter of stuff that they dealt with in basically every case. All right, now what do we do with you? You're exactly right, Judge. So that's why I'm thinking, is it, why isn't it appropriate to say under the circumstances, if you look at the regularity of proceedings, which may or may not be a smart idea, that here we've got a case where the immigration judge just decided this wasn't appropriate. Well, that decision was never made, Your Honor. And to get back to your point, immigration... Are we sure that it wasn't made? Maybe it was just made implicitly. Well, that would be a stretch, Your Honor. If you review the excerpt from the record, which has the transcript, the summarized transcript of what occurred, that an inference that the immigration judge actually considered whether Ortiz should be afforded the grace of a fast-track voluntary departure is not raised by this transcript at all, that it was never brought up, it was never discussed, everybody seemed to be laboring under this assumption that this was implicable. Well, I'm not trying to hit you with a bunch of rhetorical questions, but it whether it's fair or not is that in this case, the IJ just went right through that. Instead of mumbling a lot of magic words, I have considered voluntary departure determined in the exercise of my discretion not to grant it in this case. Knowing what he had on his hands, he simply sent the guy packing. It's clear, Your Honor, and this is an important point, that what the immigration judge did did not comport with either the CFRs or board authority. Because what immigration judge has the onus and, indeed, must inform the non-citizen of fast-track eligibility if he is eligible. And he must afford this non-citizen the right to apply for it if he's statutorily eligible. And the judge just did not do this in this case. This is exactly what happened in Henry Cordova where the board sent him back and said, you know, these pro se non-citizens aren't going to know this. You, immigration judge, have to tell them that this is a possibility and let them apply for it and make their case for it. That just never happens here. So we have definitively established a defect in this immigration proceeding. If we agree with you, what would you have us do? Well, what the precedent establishes, especially recent authority from this court, is that the government should be afforded an opportunity to show that we cannot establish prejudice. That was never brought up at the district court level. There was never any factual findings from the district court on the issue of prejudice. And I would ask this court to do, after it determines the legal question, if it determines it in the appellant's favor, is to reverse and ask for a hearing on the issue of prejudice where we would and the government would come forward with evidence to show that it would have been plausible. But an important point here, and one thing about fast-track voluntary departures that we like as the defense bar, is that what the case law says is that the discretion can be exercised in a manner that has nothing to do with a non-citizen. Because this was a tool to let immigration judges clear their dockets. It allows the judge to get this person extricated from the country in return for him waiving all his rights. It gets the job done fast, quickly, the board says the court should use it whenever possible. And I would like to reserve my last 20 seconds for rebuttal, if I may. Thank you. Thank you, counsel. Mr. Bork. Good morning, Your Honors. Robert Bork of the United States. I would focus on the concept of prejudice. As Judge Trotis indicated, the concept of voluntary departure has been in existence for the immigration law in quite some time. And I think there's another policy, you've heard a lot about policy from the defense, but there's a specific policy as enunciated in the Coronado-Dorazzo case, I cited in my brief, that persons involved in drug offenses should not be treated leniently. And clearly this defendant was in possession of a controlled substance. It was a felony. It was cocaine. We're not talking about marijuana. And so I think it's equally likely that the immigration judge did, in fact, exercise their discretion under that policy and make the decision to deny the defendant a free leave. Well, there's nothing on the record which would suggest that he even considered it. The record is unclear. That is correct. I can't say that they specifically said, I consider this under the discretionary authority I have. So the record is unclear on that. I agree. I'm just suggesting that policies presented by the defendant are equally countered by policies the government can present about drug convictions and how illegal aliens should not be allowed to stay in this country after such convictions. Well, Judge Trott suggested the words were magic words for the I.J. to articulate it, that he had considered it. But sitting in our position, not knowing what goes on day in and day out in these, isn't it pretty much required that we have some indication on the record that even if it's a truncated reference, that there be some indication that the I.J. adverted to the issue rather than have us try to analyze the nature of the offense and what you're suggesting so we can intuit what the I.J. must have done? I would agree with your comments, Judge Trott, especially if this case were coming up directly from an appeal from the Immigration Board. But when you add the extra layer that this is really a collateral attack in a 1326 case, then I think the concept of prejudice takes another view, and that's the other one that was asked last at defense counsel, and that is, what did the district court and the Immigration Board do? And I will concede in this case that although the discussion of prejudice came up in the case law, there were no definitive factual findings by either the Immigration Board, excuse me, by the magistrate judge or the district court judge on that issue. And because the standard is plausible grounds, and there is case law, the Ebaldo Figueroa case being most recent, that indicate that if that issue has not been properly developed below, then it should be remanded for that purpose. And so I believe  that the case law is clear, and I think that the case law is clear. I'm sorry, Your Honor. Why are you objecting to that remand to make the record whole? I'm sorry. I was trying to say I conceded at this point, Your Honor, in looking at the case law. I would agree. Obviously, my position would be is that we do have sufficient facts based upon the pre-sentence report and matters that happened after the plea, but I will concede that in looking at the case law, it's clear that the district court did not make proper findings, did not have proper evidence, and therefore, a remand as to the finding of the plausibility of relief and the unlikelihood the defendant would have been allowed to receive that relief should be remanded for that limited purpose. I'm looking at the findings and recommendations dated December 10, 2002, United States Magistrate Judge, District of Nevada. It says he entered the United States near Nogales sometime in 1994 without inspection and admission into the United States. Then in the chronological sequence, it seems that he was convicted of cocaine possession April 25, 2000. Shortly after entry of his conviction, he appeared before an immigration judge for a removal hearing on May 8, 2002. At the hearing, he admitted he could be removed for both his criminal conviction and his entry without inspection. Quote, the IJ determined that based on Ortiz-Lopez admissions, he was not eligible for relief from removal and did not inform Ortiz-Lopez that he was eligible for a grant of voluntary departure. That accurately describes what we're dealing with? It doesn't. The immigration judge did not state the reason why the defendant was deemed ineligible. And, again, I have to agree that the notice to appear of the defendant's immigration matter did not specifically address whether his possession of cocaine conviction was considered an aggravated felony, which I think would make the record clearer. And because we're in a collateral attack mode, I think I still am allowed to argue that it was sufficient for the court to find below and for this court to affirm that the court did not air the issue now, whether or not the air or prejudice the defendant or not, and that's the record we need to make in front of the district court judge. Okay. So I can get this clear in my own head. Why was he not eligible for relief from removal? What determination did the IJ make in that regard? It is not clear from the record. Just as counsel suggested his opinion as to what might have meant, my suggestion was that an argument based upon policy of the immigration authorities with regard to convicted drug felons in relation to deportation and removal, but to be frank, it is speculation as to why the court found the defendant ineligible, the immigration court found him ineligible. But I still think that that allows for the court's district court ruling to stand and for the only issue being whether or not the defendant was specifically prejudiced, and that would require some presentation of evidence as to the defendant's status in this country as of that notice. At that time, he would have been eligible for voluntary departure unless this was an aggravated felony. Is that not correct? That's correct. Under the rationale that was presented by opposing counsel, it was not an aggravated felony. Well, that's certainly his argument. Of course, I argue and suggest that it is improperly found an aggravated felony for immigration purposes. I also realize that very issue is now before the court. My opinion was just withdrawn. So clearly, that issue will be decided in another context, more likely or not. And obviously, if that's the court's ruling, then the defendant should prevail. But at this point, that's an open question. And so my argument would be is that the Ibarra-Galindo logic does apply and the case should be remanded to district court for these findings of prejudice. Thank you. Do you disagree with the argument that there should be a uniform principle of what constitutes aggravated felony as opposed to the sentencing context? I agree with the rulings that it should be uniform, but I don't agree that it has to be different. I think that because of the Congress's policy to treat drug offenders, illegal and drug offenders, and persons that should not receive any leniency, I think it is Thank you. Thank you, counsel. Very limited time. I just want to make two points. The first is that Take your time. We don't want you to be rushed. Thank you, Your Honors. The district court and the magistrate focused, lasered in on the government's primary argument here that this prior conviction was an aggravated felony. That's why he didn't suffer a due process defect by the immigration judge not informing him about ground for relief. So the lower court, the district court, both the magistrates and the district court's adoption of his findings of fact, conclusions of law, centered on the fact that the court determined this was an aggravated felony. Now, whether it is in the immigration context is a matter in flux in this court. This court entered a decision saying that it would not be considered an aggravated felony, but then that decision was withdrawn recently. So that is not, that's a Cazares-Gutierrez case. So that was not precedent here. Should we wait for that case to be definitive? I would argue that's not particularly relevant. And the reason for that, for my statement there is this, that at the time of my client's removal, forward precedent was definitive, pellucid, clear that it would not be. And he would have appealed to that board if he had been able, if he had not waived his right to appeal unknowingly and involuntarily. If this had been brought up, the immigration judge rendered a decision, he would have appealed, the board would have sustained that appeal. It's clear under forward precedent at that time that this would not have been considered an aggravated felony. Pellucid. Have you been reading Judge Fernandez's opinions? I do sometimes. I do, Your Honor. I think that's where I acquired the word. Melville used it frequently, especially in Moby Dick. Anyway, I do have a question for you. Yeah, but pellucid there meant whale blubber. Probably. You're asking for a remand. You say you'll be able to establish prejudice. I have a great argument for prejudice, and I would direct this Court. Is it inappropriate for me to ask you what that is? Would that be broadcasting to the other side, or would you care to tell us exactly how you'll do it? I can tell this Court exactly. First, my burden is not a heavy one. It need only show plausibility. And the board, in a case called Henry Eloy Agbelas Campos, laid out the criteria for the judge's, the judge's exercise discretion for fast-track voluntary departures. And there the Court said the most important factor is the defendant's immigration history. In that case, in Agbelas Campos, the individual had been granted not one, two, but five voluntary departures. And the immigration judge in that case said enough is enough. You aren't getting the message. We're going to remove you. We're going to give you the legal operative removal, the real removal this time, because you so clearly, you know, a five-time loser is enough. My client, his immigration history is clear. He has never been granted a voluntary departure. This is his first removal proceeding. And I would also note the district court in this case, in looking at Ortiz Lopez's life, exercised discretion in his favor by giving him a low-end recommendation. His criminal history is not lengthy. He is not anywhere near the type individual we usually see in these 1326 prosecutions with pages and pages and pages of violent, heinous criminal acts. That is not my client. Where is your client right now? My client has been removed as of March 28th. He discharged his sentence on March 28th of this year, and he has been removed back to Mexico. Does that mean anything in connection with what we could or should do? No. It will be difficult for me to get him back for remand, but it doesn't have to be. How do you get him back for remand? Do you have to apply for special parole into the United States for the hearing? You do, essentially. How long will that take? It takes a while. I'm in the process of it. I just have been trying to do it in another manner, and I basically had to give up and have the guy's deposition taken in Mexico. The practicalities are difficult, but that's my problem, not this court's. And you're still in contact with your client? I can get a hold of him if I need to. He may be in San Diego. Who knows? Hopefully not. That would be against counsel's advice. Thank you both for your arguments and your briefs. Very well done on both sides. We appreciate that. The case just argued is order submitted. We'll call United States v. Jose. I want to interject to both counsel. We have a lot of immigration cases pending before this court, and I hope you'll take back to your supervisors in your respective areas that this is one of the best arguments, candid, direct, succinct. I really appreciate both of you, and I hope you'll take that back, because we appreciate good arguments and candid arguments. Thank you. I think we all would endorse that. Thank you, Judge Fischer. United States v. Jose Trinidad-Lopez. Good morning, Your Honors. My name is Gary Huss. I am counsel for appellant Mr. Lopez. I was trial counsel. I wanted to first note that there is a typographical error in my reply brief, page 8, the fourth line, where it reads, Mr. Redberg. It should read Mrs. Redberg. Today I. Hold on a second.
judges: B. Fletcher,trott, Fisher